IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD E. ALONZO,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **JOE TERRA,** *et al.*, | : | **NO. 23-CV-2532** |
| Defendants. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                           **MAY 3, 2024**

Plaintiff Ronald E. Alonzo ("Alonzo") brings this pro se action against seven individual defendants and SCI Phoenix, where Alonzo was incarcerated at the time his claims arose. Alonzo alleges a cause of action under 42 U.S.C. § 1983 for various violations of his constitutional rights, as well as a state tort claim for sexual assault. ECF No. 1. Five Defendants ("Moving Defendants") – Deputy Superintendent Charles Hensley, Hearing Examiner Yodis, Warden Jaime Sorber, Corrections Officer Wagner, and Lieutenant Diguardi – move to dismiss Alonzo's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 25. For the reasons discussed below, the Motion to Dismiss brought by Moving Defendants is denied in part and granted in part, without prejudice.

I.   **Background[1] and Procedural History**

Alonzo's Complaint sets forth allegations of Moving Defendants' retaliatory conduct after Alonzo appealed a misconduct charge against him. The misconduct charge concerned an incident

---

[1]   Consistent with the appropriate motion to dismiss legal standard, all facts recited herein are those alleged by the Plaintiff in his Complaint (ECF No. 1). *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (explaining that on a motion to dismiss, courts must "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff" (citation omitted)). The Court may also consider "document[s] *integral to or explicitly relied upon* on the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

on March 28, 2021, when Defendant Wagner, a female Corrections Officer at SCI Phoenix, filed a Misconduct Report, stating that as she sat in her assigned area and observed Alonzo cleaning the staff bathrooms, he stood inside the bathroom with the door propped open and masturbated. ECF No. 2, Ex. A. Wagner stated that she told Alonzo to stop, cuffed him, and escorted him back to his housing unit. *Id.* Wagner then charged Alonzo with sexual harassment and indecent exposure. *Id.*

Alonzo submitted a written statement dated March 28, 2021 – the day of the incident – to the prison's Prison Rape Elimination Act ("PREA") Coordinator, challenging Wagner's version of events in the bathroom. *Id.* at Ex. B. In his statement, Alonzo stated that as he was cleaning the staff bathrooms, "eight to four officer[2] approached me unexpectedly and commanded me to perform sexual acts namely (start masturbating) in front of [Wagner] while she watched from a few feet away. When I refused to perform those demeaning sexual acts for eight to four officer Wagner[,] she issued me a DC-141," i.e., a Misconduct Report. *Id.* He further stated that Wagner was sitting "with her legs wide open for me to see" and that he "constantly refused to give into her demands." *Id.* This statement was later shared with Pennsylvania's PREA Coordinator's Office. ECF No. 1 ¶ 15.

Thereafter, at a Misconduct Hearing, Alonzo argued that Moving Defendant Yodis, the Hearing Examiner, should dismiss Alonzo's charges because Wagner "was watching [Alonzo] perform various bodily and janitorial functions in direct violation of [the] PREA's 'voyeurism' policy."[3] *Id.* at ¶¶ 8, 14 n.1. Yodis determined Alonzo was guilty of the indecent exposure charge

---

[2] It's not clear from the Complaint if "eight to four" refers to a group of officers in addition to Wagner, or if "eight to four" refers to Wagner only. The Court will interpret this term as referring to Wagner only, as Alonzo does not allege elsewhere that anyone other than Wagner was directly involved in the events in the bathroom.

[3] Under the PREA, sexual harassment includes "voyeurism" by a staff member, contractor, or volunteer. Voyeurism is defined as "an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate performing bodily functions." 28 C.F.R. § 115.6.

but dismissed the sexual harassment charge. ECF No. 2, Ex. F. Yodis sanctioned him to thirty days in Disciplinary Custody and the loss of his job. *Id.*

Alonzo appealed to the prison's Program Review Committee ("PRC"), which upheld Yodis's decision. *Id.* Alonzo then appealed the PRC's decision to Moving Defendant Sorber, *id.* at Ex. D, a Warden/Superintendent at SCI Phoenix responsible for reviewing inmates' administrative appeals of disciplinary charges, ECF No. 1 ¶ 9. Sorber denied this appeal, upholding Yodis's finding that he believed Wagner's report over Alonzo's denial. *Id.* at ¶ 14 n.1; ECF No. 2, Ex. D.

Alonzo was then interviewed by Moving Defendant Lt. Diguardi, a correctional lieutenant in charge of investigating PREA complaints at SCI Phoenix. ECF No. 1 ¶ 7. Alonzo alleges that Diguardi "accosted" him with his PREA statement regarding Wagner's conduct on March 28, 2021. ECF No. 1 ¶ 15. Alonzo also alleges that Diguardi then ceased investigating Alonzo's PREA claim and informed non-moving Defendant Deputy Warden Terra of Alonzo's allegations against Wagner. *Id.*; ECF No. 28 at 2 n.1.

After Alonzo completed his thirty days in Disciplinary Custody, he was placed in Administrative Custody, rather than released back into the general prison population. ECF No. 1 ¶ 15; ECF No. 2, Ex. H. The Department of Corrections form authorizing this decision, signed by non-moving Defendant Jordan, stated that SCI Phoenix had "an operational need" to temporarily assign Alonzo to Administrative Custody. ECF No. 2, Ex. H.

Alonzo appeared before SCI Phoenix's Program Review Committee regarding his assignment to Administrative Custody. ECF No. 1 ¶ 16. Alonzo alleges that non-moving Defendant Terra thereafter stated in the Program Review Committee's "weekly daily" report that Alonzo was "[p]laced in AC due to possible PHX separation. Remain AC pending decision. Initial review process explained." *Id.* A few months later, on July 1, 2021, Alonzo was transferred from

SCI Phoenix to SCI Chester, *id.* ¶ 17, and issued an "H-Code," which prohibited him from obtaining employment outside of his housing unit, *id.*; ECF No. 2, Ex. I.

On June 29, 2023, Alonzo filed his Complaint against the five Moving Defendants (Hensley, Yodis, Sorber, Wagner, and Diguardi), two non-moving Defendants (Terra and Jordan), and SCI Phoenix, seeking damages and declaratory and injunctive relief under 42 U.S.C. § 1983. ECF No. 1. On October 10, 2023, the Court dismissed Alonzo's claims against SCI Phoenix, his official capacity claims against Moving Defendants Hensley and Sorber, and his request for declaratory relief.[4] ECF No. 10. Accordingly, the remaining claims are his § 1983 claims against the five Moving Defendants and the two non-moving Defendants, as well as a state claim for sexual assault under 42 Pa. C.S.A. § 5551(7).[5] Moving Defendants filed their instant Motion to Dismiss on December 8, 2023, which seeks to dismiss all claims against Moving Defendants.[6] ECF No. 25. Alonzo filed a Response in Opposition to the Motion on March 18, 2024. ECF No. 28.

## II.     STANDARD OF LAW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere

---

[4]     Official capacity claims were also dismissed against the two non-moving Defendants, Terra and Jordan.
[5]     In his Complaint, Alonzo does not attach the sexual assault claim to a specific Defendant. ECF No. 1 at 2.
[6]     Moving Defendants move to dismiss "all" claims against them, but only address Alonzo's § 1983 claims in their Memorandum of Law in support of their Motion to Dismiss (ECF No. 25). Accordingly, the Court will only address Alonzo's § 1983 claims here.

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a motion to dismiss, courts may consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Finally, when considering a motion to dismiss, a district court is "required to interpret the *pro se* complaint liberally." *Sause v. Bauer*, 585 U.S. 957, 960 (2018).

## III.   DISCUSSION

Alonzo alleges Moving Defendants violated his First, Eighth, and Fourteenth Amendment rights under the U.S. Constitution pursuant to 42 U.S.C. § 1983. ECF No. 1. Specifically, Alonzo asserts that upon exercising his First Amendment right to file a PREA statement against Wagner, Moving Defendants engaged in three instances of retaliatory conduct, which violated Alonzo's Eighth and Fourteenth Amendment rights: (1) transferring Alonzo from SCI Phoenix to SCI Chester; (2) imposing an H-Code; and (3) confining Alonzo in segregation in Administrative Custody. *Id.*

Moving Defendants assert that Alonzo's § 1983 retaliation claims fail because he has not asserted that any of the Moving Defendants were personally involved in the alleged acts of retaliation. ECF No. 25 at 9. It is well-established that a § 1983 claim requires a plaintiff to show that a defendant was personally involved in the complained-of conduct. *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015). In addition to allegations specifically stating a defendant's "personal involvement," "a civil rights complaint [must] state[]

5

the conduct, time, place, and persons responsible." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citations omitted).

Moving Defendants also assert that Alonzo's § 1983 retaliation claims fail because Alonzo fails to assign specific liability among Defendants. That is, Moving Defendants contend that because Alonzo makes averments against a general class of "Defendants" without identifying which Moving Defendant was personally involved in which alleged act of retaliation, his § 1983 retaliation claims must fail. ECF No. 25 at 11. Indeed, in a § 1983 case against multiple defendants, the complaint "must portray specific conduct by state officials which violates some constitutional right of the complainant." *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970). However, while a plaintiff "will ultimately have to prove that each individual defendant violated his constitutional rights to survive summary judgment or succeed at trial," a plaintiff may identify a "sub-group of defendants" responsible for specific constitutional misconduct at the motion to dismiss stage of a case, before the completion of discovery. *Wright v. City of Phila.*, 229 F. Supp. 3d 322, 338 (E.D. Pa. 2017) (citations omitted). As long as there is enough detail to provide defendants notice of the nature and basis of the claims against them, a plaintiff's allegations can be sustained. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Here, contrary to Moving Defendants' assertions, Alonzo does not make his § 1983 retaliation claims against against a generic group of "all Defendants" or even a sub-group of defendants. Rather, he identifies individual Defendants by name and makes various allegations regarding each individual's personal involvement in or knowledge of the events recounted in his Complaint. The question at issue, then, is whether these allegations are sufficient to sustain Alonzo's § 1983 claims that Moving Defendants personally engaged in or knew about specific

6

acts of retaliation against Alonzo after he filed his PREA statement against Wagner. The ensuing discussion will thus examine each Moving Defendant's alleged conduct against this benchmark.[7]

### A. Deputy Superintendent Charles Hensley, Hearing Examiner Yodis, Warden Jaime Sorber, and Corrections Officer Wagner

The Court finds that Alonzo has not sufficiently pled the personal involvement of Moving Defendants Hensley, Yodis, Sorber, and Wagner in specific retaliatory conduct to sustain his §1983 retaliation claims. Accordingly, Alonzo's §1983 claims against each of these Defendants will be dismissed from this case, without prejudice to amend the Complaint.

Alonzo alleges that Deputy Superintendent Charles Hensley, who also served as the PREA Compliance Manger at SCI Phoenix, failed to stop non-Moving Defendant Terra from retaliating against Alonzo by transferring him from SCI Phoenix to SCI Chester on July 1, 2021. ECF No. 1 at 7. This is the only fact pled with respect to Hensley and his alleged personal involvement in or knowledge of any of the events recounted in Alonzo's Complaint. As such, Alonzo pleads no facts to plausibly allege that Hensley had actual knowledge of or acquiescence in Terra's retaliatory

---

[7] The legal merits of Alonzo's § 1983 claims will not be analyzed here, as Alonzo's claims against Moving Defendants cannot proceed unless personal involvement of each defendant is first sufficiently pled.

However, it may be helpful to provide a short overview of the legal basis for Alonzo's § 1983 claims. A plaintiff making a First Amendment retaliation claim under § 1983 must plausibly allege (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Zimmerlink v. Zapotsky*, 539 F. App'x 45, 48 (3d Cir. 2013) (citation omitted).

In prisoner cases, the Third Circuit is clear that a prisoner "need not prove that he had an independent liberty interest" in the privilege denied by the retaliatory action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The "relevant question" is instead whether a prisoner was denied such privileges in retaliation for exercising a constitutional right. *Id.* In this query, the prisoner-plaintiff must show that the "his exercise of a constitutional right was a substantial or motivating factor in [the retaliatory action]." *Id.* at 334. However, upon this showing, prison officials may still prevail if they can show that "they would have made the same decision regardless of prisoner's protected conduct and that the decision relates to a legitimate penological interest." *Id.*

Here, Alonzo alleges that the three acts of retaliation are constitutional violations in their own right, whether or not such acts were motivated by a desire to punish Alonzo for exercising his First Amendment right to file a PREA statement against Wagner.

conduct, nor does he describe Hensley's role in failing to stop Terra from retaliating with any specificity as to time, place, or particular conduct.

Alonzo also sets forth meager facts related to Yodis, the Hearing Examiner at Alonzo's Misconduct Hearing. Alonzo recounts only that Yodis determined Alonzo was guilty of the indecent exposure charge and sanctioned him to thirty days in Disciplinary Custody and the loss of his job. ECF No. 2, Ex. F. Alonzo appealed this decision to the Program Review Committee, which upheld Yodis's decision. *Id.* Thereafter, Alonzo says nothing more about Yodis or his personal involvement in the events recounted in the Complaint, retaliatory or otherwise. Nevertheless, Alonzo calls upon the court to issue an injunction ordering Yodis, among others, to immediately vacate his H-Code classification, ECF No. 1 at 5, but Alonzo provides no details regarding Yodis's knowledge of the H-Code classification or personal involvement in imposing the H-Code.

Similarly, Alonzo pleads minimal facts related to Jaime Sorber, the Warden at SCI Phoenix in charge of reviewing administrative appeals of disciplinary charges files by inmates. After the Program Review Committee upheld Yodis's finding that Alonzo was guilty of indecent exposure, Yodis appealed to Sorber, who denied the appeal. ECF No. 2, Ex. D. As with Yodis, Alonzo calls upon the court to issue an injunction ordering Sorber, among others, to immediately vacate Alonzo's H-Code classification, ECF No. 1 at 5. Yet Alonzo offers no facts to plausibly allege that Sorber had any involvement in or knowledge of the classification, or any of the other acts of retaliation.

As for Corrections Officer Wagner, Alonzo states that she filed the Misconduct Report against Alonzo, charging him with two counts of sexual harassment and indecent exposure, which resulted in a sanction of thirty days in Disciplinary Custody and the loss of his job. ECF No. 2, Exs. A, F. Alonzo asserts that he challenged Wagner's version of events in a written statement to

8

the PREA Coordinator, in which he claimed that Wagner violated the PREA's voyeurism policy by commanding him to perform sexual acts in front of her. *Id.*, Ex. B. Other than these events, Alonzo does not plead any facts that support his allegations that Wagner was personally involved in or had knowledge of later acts of retaliation. That is, Alonzo makes no averments that Wagner was personally involved in transferring Alonzo to SCI Chester, imposing an H-Code, or confining Alonzo in segregation in Administrative Custody.

The relevant conduct of each of these four Moving Defendants occurred prior to the three acts of retaliation alleged by Alonzo. If these Defendants were personally involved in subsequent acts of retaliation, Alonzo wholly fails to plead sufficient facts to put Defendants on notice of the claims against them. Therefore, as a threshold matter, Alonzo cannot sustain his § 1983 retaliation claims against Hensley, Yodis, Sorber, or Wagner, and these claims are dismissed, without prejudice.

### B.   Lieutenant Diguardi

The Court finds that Alonzo has pled sufficient facts to support his allegations that Defendant Diguardi, the correctional lieutenant in charge of investigating PREA complaints at SCI Phoenix, was personally involved in placing Alonzo in Administrative Custody and/or transferring him from SCI Phoenix to SCI Chester. For example, Alonzo states that Diguardi interviewed him regarding his PREA statement against Wagner. ECF No. 1 ¶ 15. Alonzo alleges that after this statement was forwarded to Pennsylvania's PREA Coordinator's Office, Diguardi ceased SCI Phoenix's own PREA investigation and reported his findings to non-moving Defendant Terra. *Id.* at 6. Alonzo claims that Diguardi's actions "led to the revocation of [Alonzo]'s April 27, 2021 release date 'back' to the 'general population,'" *id.* at 7, following his thirty days in Disciplinary Custody.

9

Alonzo further alleges that Diguardi's "systematic role" led to the "retaliatory transfer" of Alonzo from SCI Phoenix to SCI Chester on July 1, 2021. ECF No. 1 at 7. Alonzo compares his alleged treatment to a similar case at SCI Phoenix, in which Diguardi did not order the transfer or separation of a prisoner found guilty of indecent exposure. *Id.* Alonzo avers that this difference in Diguardi's handling of similar cases "substantiates" his argument that Diguardi's transfer of Alonzo was "retaliatory in nature after [Alonzo] had invoked his First Amendment right to cooperate with the PREA investigation of . . . Wagner's misconduct allegations." *Id.*

These facts sufficiently describe Diguardi's personal involvement in alleged acts of retaliation and satisfy the particularity requirement of "conduct, time, and place." *Evancho*, 423 F.3d at 353. Alonzo specifically identifies Diguardi's allegedly problematic conduct, i.e., that Diguardi "accosted" Alonzo with the PREA statement, ceased SCI Phoenix's PREA investigation, informed Terra of Alonzo's PREA statement against Wagner, and treated Alonzo differently than a similarly-situated prisoner found guilty of indecent exposure. Accordingly, the Court denies Moving Defendants' Motion to Dismiss on Alonzo's § 1983 retaliation claim against Diguardi.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Moving Defendants' Motion to Dismiss (ECF No. 25). The Court will grant the motion with respect to Alonzo's § 1983 claims against Moving Defendants Hensley, Yodis, Sorber, and Wagner, without prejudice to Plaintiff filing an Amended Complaint. The Court will deny the motion with respect to Alonzo's § 1983 claims against Moving Defendant Diguardi. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

_____
**CHAD F. KENNEY, J.**