## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD E. ALONZO, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| JOE TERRA, et al., | : | |
| *Defendants.* | : | No. 23-cv-2532 |

### MEMORANDUM

KENNEY, J.                                                                                            August 5, 2025

Defendants Superintendent Joe Terra, Lieutenant DiGuardi, Corrections Officer Wagner and Corrections Counselor Jordan move for summary judgment as to Plaintiff Ronald E. Alonzo's claims that his placement in administrative custody, change in program code, and prison transfer violated the First, Eighth, and Fourteenth Amendments, and his state law claim for sexual assault. For the reasons set forth below, the Court will **GRANT** Defendants' Motion for Summary Judgment with respect to Plaintiff's federal law claims. The Court will decline to exercise supplemental jurisdiction over the remaining state law claim for sexual assault and will therefore **DISMISS** that claim without prejudice.

### I.        BACKGROUND

The facts underlying Mr. Alonzo's Complaint stem from a March 28, 2021 incident involving Defendant Corrections Officer Wagner, as further described below.

**A.  March 28, 2021 Incident and Misconduct Process**

On March 28, 2021, Plaintiff Alonzo, a prisoner then-incarcerated at SCI Phoenix, was cleaning the prison's staff bathroom while Officer Wagner, a female corrections officer at SCI Phoenix, was monitoring the nearby staff dining hall.  *See* ECF No. 72-4 at 2.  Officer Wagner stated that at this time, she saw Mr. Alonzo stop cleaning the staff bathroom and begin openly masturbating with the door ajar while looking at her.  *Id.*  Based on her account, she filed a misconduct report in connection with this incident, alleging sexual harassment and indecent exposure.  *See id.* Ahead of the misconduct hearing, Mr. Alonzo was placed in pre-hearing confinement on March 29, 2021.  *See* ECF No. 2 at 13.

Several days later, on March 31, 2021, a disciplinary hearing was held before a hearing examiner, where Mr. Alonzo pleaded not guilty to the misconduct charges and claimed he was only cleaning the bathroom.  ECF No. 72-5 at 2.  Mr. Alonzo argued the sexual harassment and indecent exposure charges should be dismissed under the Prison Rape Elimination Act's ("PREA's") voyeurism provisions, ECF No. 1 ¶ 14 n.1, which prohibit "[v]oyeurism by a staff member . . . mean[ing] invasion of privacy of an inmate . . . unrelated to official duties," 28 C.F.R. § 115.6.  The hearing examiner found Officer Wagner's version of events credible and Mr. Alonzo guilty of indecent exposure, but the examiner dismissed the sexual harassment charge.  *See* ECF No. 2 at 13; ECF No. 72-5 at 2.  Mr. Alonzo lost his job and was sanctioned to thirty days in disciplinary custody, including his time served beginning March 29, 2021, setting his release date from disciplinary custody at April 27, 2021.  *See* ECF No. 2 at 13.

On March 29, 2021, the day after filing the misconduct and a couple of days prior to the disciplinary hearing, Officer Wagner submitted a separation request from Mr. Alonzo, claiming he "lurk[ed]" near her during her lunch hour, stood in "close proximity" to her after being

previously asked not to, and deliberately waited until the dining hall was empty to request bathroom access, after which he would stand very close to her while she opened the door. ECF No. 72-11 at 2. Officer Wagner expressed concern for her safety and feared retaliation for filing the misconduct report. *See id.* An internal security lieutenant reviewed the request the same day and recommended approval, stating that failing to separate Mr. Alonzo could "cause a disruption to the safe and secure operation of the facility." ECF No. 72-12 at 2–3.

On March 31, 2021, the day after the disciplinary hearing, Mr. Alonzo appealed his misconduct to the Program Review Committee, claiming Officer Wagner intentionally positioned herself with a view of the men's bathroom and suggesting ulterior motives behind the misconduct. *See* ECF No. 72-6 at 2; ECF No. 2 at 13. The Committee received the appeal on April 1, 2021, and upheld the hearing examiner's decision on April 7, 2021. *See* ECF No. 2 at 13.

On April 13, 2021, Mr. Alonzo appealed the Program Review Committee's decision to Superintendent Sorber, who is responsible for reviewing appeals of disciplinary charges at SCI Phoenix. ECF No. 1 ¶¶ 9, 14, n.1; ECF No. 72-8 at 2; *see also* ECF No. 2 at 9. His appeal to the Superintendent mirrored the appeal to the Committee, with him again alleging voyeurism. ECF No. 72-8 at 2. The Superintendent received the appeal on April 14, 2021, *id.*, and upheld the findings on April 15, 2021, crediting Officer Wagner's account. ECF No. 72-9 at 2.

At some later point, Mr. Alonzo also appealed the misconduct decision to the Chief Hearing Examiner. *See* ECF No. 2 at 11. The record does not indicate when Mr. Alonzo filed his final appeal to the Chief Hearing Examiner or when he received a response, but states only that by September 17, 2021, Mr. Alonzo had received a final review of his misconduct. *See id.*

### B.  PREA Investigation

The same day as the March 28, 2021 incident between Mr. Alonzo and Officer Wagner, Mr. Alonzo authored a statement to the Prison Rape Elimination Act ("PREA") coordinator disputing Officer Wagner's version of events and claiming that she ordered him to masturbate while she watched from a few feet away, sitting with her legs spread.[1]  ECF No. 2 at 4.

On April 22, 2021, Mr. Alonzo was interviewed by Lt. DiGuardi, a correctional lieutenant who investigates PREA complaints at SCI Phoenix.  *See* ECF No. 72-17 at 8.  Mr. Alonzo alleges Lt. DiGuardi "accosted" him with his PREA statement regarding Officer Wagner's conduct and then ceased investigating Mr. Alonzo's PREA claim.  ECF No. 1 ¶ 15; ECF No. 28 at 3 n.1.

A PREA special investigator ultimately concluded that Mr. Alonzo's allegations were unsubstantiated.  *See* ECF No. 72-17 at 4.

### C.  Administrative Custody and Prison Transfer

On April 28, 2021, Mr. Alonzo was placed in administrative custody, after appearing for a hearing before the Program Review Committee.  ECF No. 72-10 at 2; *see also* ECF No. 1 ¶ 16. According to Pennsylvania Department of Corrections' leadership, it is the standard policy of the Department to place an individual in administrative custody while there is a pending separation request against the individual.  ECF No. 72-14 at 3 (declaration of the Director of the Bureau of Population Management of the Pennsylvania Department of Corrections).  As set forth in Mr. Alonzo's Inmate Record, the Committee informed Mr. Alonzo that he would be placed in

---

[1] The purpose of the Prison Rape Elimination Act is to "establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States."  34 U.S.C. § 30302(1).  The Pennsylvania Department of Corrections designates a PREA coordinator to "develop, implement, and oversee" efforts to comply with National PREA Standards.  Pa. Dep't of Corr., DC-ADM 008 § III(C).

administrative custody pending a decision on Officer Wagner's Separation Request.[2]  ECF No. 72-10 at 2.  In his deposition, Mr. Alonzo stated that he was told his placement was due to an "operational need."  ECF No. 72-2 at 28.  Mr. Alonzo further claims that the authorizing form was fabricated, noting that it is dated April 27, 2021, at "16:00," even though he was released from disciplinary custody at "08:00" that same day.  *See id.* at 20–21.  His Inmate Record indicates that at the April 28, 2021 hearing, the Committee explained his appeal rights and that Mr. Alonzo raised no further questions or concerns.  ECF No. 72-10 at 2.

On April 29, 2021, the Bureau of Personnel Management approved Officer Wagner's separation request.  ECF No. 72-13 at 2–3.  When the Bureau approves a separation request, it is standard policy to hold the individual in administrative custody until the individual is transferred. ECF No. 72-14 at 4.  Mr. Alonzo remained in administrative custody until shortly after his transfer date of July 1, *see id.* at 4–5, and was released to the general prison population on July 9, 2021, ECF No. 72-2 at 18.

**D.  H-Code Assignment**

In July 2021, Mr. Alonzo received an H-Code designation.  *See* ECF No. 72-10 at 2.  An "H-Code" is a housing status code used by the Pennsylvania Department of Corrections to indicate that an inmate should be placed in a single cell for administrative or security reasons and is assigned when an inmate is identified as a heightened risk, including those with a history of sexual violations.  *See* Pa. Dep't of Corr., DC-ADM 11.2.1 at 10; *see also* ECF No. 74 at 34.  This designation can influence where the inmate is housed throughout their incarceration.  *See* Pa. Dep't

---

[2] A Program Review Committee review on April 21 noted plans to release Mr. Alonzo to general housing, pending a COVID test.  ECF No. 72-10 at 3.  On April 22, the same day as Mr. Alonzo's PREA interview, his Inmate Cumulative Adjustment Record ("Inmate Record") was updated to reflect a "Correction to Previous Entry," indicating he would instead be transferred to administrative custody based on Officer Wagner's pending separation request.  *Id.*

of Corr., DC-ADM 11.2.1 at 10.   Mr. Alonzo's H-Code assignment form stated that he "demonstrate[d] sexually inappropriate behaviors towards staff" and referenced the incident on March 28, 2021.  *See* ECF No. 72-15 at 2.

It is unclear from the record the exact date on which Mr. Alonzo was informed of his H-Code assignment.  Mr. Alonzo maintains that he first learned of the assignment on July 9, 2021, when he was denied a kitchen job at SCI Chester.  *See* ECF No. 72-2 at 38–39; ECF No. 2 at 19.  The Program Review Committee's vote sheet lists a staffing date of June 30, 2021, but all signatories hand-dated the form as July 6, 2021.  ECF No. 72-15 at 2.  Mr. Alonzo's Inmate Record notes that, as of June 30, he was to be informed once the Department of Corrections issued a final decision.  ECF No. 72-10 at 3.  Those records also indicate that the H-Code was formally added to his classification record on July 26, 2021.  *Id.*; *see also* ECF No. 71 at 13.

Mr. Alonzo states that, after being assigned an H-Code, he was prohibited from having any job assignments outside of his housing unit and was required to move cells every 90 days.  ECF No. 72-2 at 24–25.  Additionally, he detailed that because of the H-Code, he could not return to higher-paying jobs such as kitchen work and instead remained a block worker earning minimum pay.  *Id.* at 16.  Mr. Alonzo also claimed that the H-Code restricted him from participating in programs for older inmates (like the Senior Life Enhancement Program) and prevented him from taking other positions within the prison that he was otherwise eligible for.  *Id.* at 42–43.

**E.  Procedural Background**

On June 29, 2023, in connection with the above events, Mr. Alonzo filed a complaint under 42 U.S.C. § 1983 against Defendants, seeking damages and injunctive relief, for violations of his

First, Eighth, and Fourteenth Amendment rights.[3]  ECF No. 1 ¶¶ 1, 18.  Mr. Alonzo also brought a state law claim against Officer Wagner for sexual assault.  *Id.* ¶ 1 (citing to a Pennsylvania criminal statute and referring to the "torts for sexual assault . . . in an institutional setting").

Mr. Alonzo moved for summary judgment on January 15, 2025.  ECF No. 62.  On March 3, 2025, Defendants also moved for summary judgment and filed an Omnibus Brief opposing Mr. Alonzo's Motion.  ECF No. 71.  On April 1, 2025, the Court denied Mr. Alonzo's Motion and directed him to respond to Defendants' summary judgment motion.  ECF No. 77 at 1–2.  Mr. Alonzo was granted an extension on April 23, 2025, ECF No. 80 at 1, and he filed his Memorandum in Opposition to Defendants' Motion for Summary Judgment on May 16, 2025.  ECF No. 83 at 50.

On July 3, 2025, the Court ordered the parties to submit briefing on three issues relevant to its jurisdiction: (1) the state of which Officer Wagner is a citizen, (2) Mr. Alonzo's residential address prior to incarceration, and (3) whether Mr. Alonzo is eligible for parole under his life sentence.  *See* ECF No. 89 at 1; *see also infra* Section III.B.  On July 10, 2025, Defendants responded that Officer Wagner is a lifelong resident of the Commonwealth of Pennsylvania.  ECF No. 90 at 2.  They further confirmed that Mr. Alonzo is serving a life sentence without the possibility of parole and that their records list his last city of residence prior to incarceration as Philadelphia.  *Id.*  Mr. Alonzo responded that he was born in Pennsylvania and "has always lived

---

[3] Plaintiff's § 1983 claims against Defendant Wagner were previously dismissed by this Court, leaving only a state law claim against Defendant Wagner. *See* ECF No. 31 at 2. Additionally, Mr. Alonzo sued four other defendants, who have since been dismissed (Hensley, Yodis, Sorber, and SCI Phoenix).  ECF No. 10 at 2; ECF No. 31 at 1.  Mr. Alonzo also previously sought declaratory relief, but this Court dismissed his claims for declaratory relief on October 11, 2023.  *See* ECF No. 10 at 2.

in the jurisdiction of this Commonwealth," though he states that at one point he resided in New Jersey.  *See* ECF No. 93 at 3 & n.1, 9.

## II.  **LEGAL STANDARD**

This Court must grant a motion for summary judgment when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  When deciding the motion, the Court must view the record "in the light most favorable to the nonmoving party." *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).  However, "[s]peculation" and "conclusory allegations" are insufficient to defeat a summary judgment motion.  *Id.* (alteration in original) (citation omitted). Ultimately, only disputes based on which a "reasonable jury could return a verdict for the nonmoving party" can support the denial of a motion for summary judgment.  *Id.* (citation omitted).

## III.  **DISCUSSION**

Defendants move for summary judgment as to Mr. Alonzo's federal claims, arguing these claims were not exhausted, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and fail on the merits.  *See* ECF No. 71 at 11–31.  Defendants likewise move for summary judgment as to Mr. Alonzo's state law claim against Officer Wagner, contending this claim is barred by sovereign immunity and fails on the merits, or that this Court should decline supplemental jurisdiction with respect to it.  Because this Court grants Defendants' Motion on exhaustion grounds, it need not reach the merits of Mr. Alonzo's constitutional claims. As this grant resolves all federal claims, and there are no factors that justify retaining jurisdiction, this Court declines to exercise supplemental jurisdiction over Mr. Alonzo's remaining state law claim.

### A.  Exhaustion

Under the PLRA, a prisoner must properly exhaust all administrative remedies that are "available"—meaning remedies that are "capable of use to obtain some relief for the action

complained of." *Webb v. Dep't of Just.*, 117 F.4th 560, 567 (3d Cir. 2024) (citation omitted); *see also Perttu v. Richards*, 145 S. Ct. 1793, 1798 (2025). Proper exhaustion gives prisons an opportunity to resolve complaints internally, screen out claims that lack merit, and develop an administrative record to assist any later litigation. *See Booth v. Churner*, 532 U.S. 731, 737 (2001). The Supreme Court has recognized three scenarios where a remedy, though formally in place, is not available: when "it operates as a simple dead end," it is "so opaque that it becomes, practically speaking, incapable of use," or prison officials "thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Rinaldi v. United States*, 904 F.3d 257, 266–67 (3d Cir. 2018) (citing *Ross v. Blake*, 578 U.S. 632, 643–44 (2016)).

Mr. Alonzo does not argue in his summary judgment briefing that he filed any grievance about his administrative custody, transfer, or H-Code that was ignored or rejected.[4] *See* ECF No. 83 at 5. Yet, he was aware of the grievance process and had previously filed grievances. *See* ECF No. 72-19 at 7–10. Accordingly, Mr. Alonzo has not demonstrated that the grievance process was unavailable to him. Because Mr. Alonzo did not follow the required steps under prison policy and, as discussed below, none of the recognized exceptions excuse his noncompliance, he failed to exhaust his administrative remedies as the PLRA requires. *See* 42 U.S.C. § 1997e(a); *Rinaldi*, 904 F.3d at 266–67.

---

[4] Mr. Alonzo's appeal of the original misconduct charge does not satisfy the PLRA's requirements because it focused solely on the indecent exposure charge filed by Officer Wagner and did not mention his placement in administrative custody, his transfer to SCI Chester, or his H-Code classification—all of which occurred after his initial misconduct hearing and multiple levels of appellate review for the misconduct. *See* ECF No. 2 at 9; ECF No. 72-8 at 2; *see also* ECF No. 72-2 at 44 (Mr. Alonzo testified in his deposition that he "did all that" in response to a general question about whether he was aware of the exhaustion requirement). An appeal of a misconduct charge does not substitute for a grievance challenging later retaliatory conduct. *Cf. Washington-El v. Beard*, 562 F. App'x 61, 64–65 (3d Cir. 2014) (appeal regarding other grievances did not satisfy the exhaustion requirement).

### a.  Prison Transfer and H-Code Assignment

Mr. Alonzo did not exhaust the prison's available administrative remedies for his prison transfer and H-Code assignment.  *See* 42 U.S.C. § 1997e(a); *Rinaldi*, 904 F.3d at 266–67. Defendants argue, and Mr. Alonzo does not dispute in his opposition, that he did not file grievances regarding his transfer from SCI Phoenix to SCI Chester or his H-Code designation.  *See* ECF No. 71 at 13.  Mr. Alonzo instead contends that prison officials thwarted his efforts to grieve these issues.  *See* ECF No. 83 at 5.  However, the record does not support the claim that officials misled or prevented Mr. Alonzo from filing any grievance, nor does it indicate that the grievance process was otherwise unavailable.

First, regarding the H-Code designation, Mr. Alonzo did not properly exhaust his administrative remedies.  The Pennsylvania Department of Corrections requires an inmate to file a grievance within fifteen working days of the underlying event, using the designated grievance form.  Pa. Dep't of Corr., DC-ADM 804 §§ 1(A)(5), 1(A)(8).  If that deadline is missed, the inmate may request an extension by submitting a written explanation to the Facility Grievance Coordinator, who may grant additional time.  *Id.* § 1(C)(2).  This extension request is part of the grievance process and must be used once any temporary obstacle is removed.  *See Talley v. Clark*, 111 F.4th 255, 263–64 (3d Cir. 2024) (inmate who lacked writing materials was required to seek an extension once he procured writing implements).  Failure to request an extension or pursue the required appeals means the inmate has not fully exhausted the administrative remedies available under Policy 804.  *See id.*

Mr. Alonzo testified that he learned of his H-Code designation on July 9, 2021, when a kitchen supervisor at SCI Chester informed him of it.[5]  *See* ECF No. 72-2 at 39.  Even using the date that the H-Code was formally added to his record, July 26, 2021, ECF No. 72-10 at 2, he did not file a grievance within the fifteen working days of July 26, 2021 required under DC-ADM 804 or request an extension to do so.  *See* Pa. Dep't of Corr., DC-ADM 804 § 1(A)(8).  Indeed, the record reflects that he never filed any grievance about his H-Code and instead filed grievances about unrelated issues, like mail, during the same period.  *See* ECF No. 72-18 at 6, 8.

Likewise, Mr. Alonzo failed to grieve his transfer from SCI Phoenix to SCI Chester.  The transfer occurred on July 1, 2021, *see* ECF No. 72-14 at 5, which set the grievance deadline as July 23, 2021.  ECF No. 72-10 at 2; Pa. Dep't of Corr., DC-ADM 804 § 1(A)(8).  However, Mr. Alonzo did not file any grievance about the transfer or request an extension, despite actively using the grievance system for other matters during this same timeframe.  *See* ECF No. 72-18 at 8.  Because he did not pursue the required steps under Policy 804, he did not properly exhaust his administrative remedies for either the H-Code or the transfer.  *See Talley*, 111 F.4th at 262–63.

Mr. Alonzo contends that he was excused from exhausting administrative remedies because prison staff allegedly thwarted grievance efforts.  To establish thwarting, an inmate must show that officials affirmatively blocked his use of the grievance process "through machination, misrepresentation, or intimidation."  *See Ross*, 578 U.S. at 644; *Brown v. Croak*, 312 F.3d 109, 112–13 (3d Cir. 2002) (dispute of fact existed as to whether prison staff thwarted inmate from exhausting remedies by telling the inmate to wait to file a grievance after an investigation

---

[5] The record is mixed on when Mr. Alonzo learned of his H-Code designation.  The prison's records show a staffing date of June 30, handwritten signoffs dated July 6, and a final formal classification date of July 26.  *See* ECF No. 2 at 19; ECF No. 72-2 at 39; ECF No. 72-10 at 2; ECF No. 72-15 at 2.

concluded).[6]  But unlike plaintiffs who have successfully invoked the thwarting exception, Mr. Alonzo does not point to any instances of thwarting and did not engage with the grievance process at all for his H-Code designation or transfer, which renders his assertion invalid.  Mr. Alonzo relies primarily on *Croak*, where the Third Circuit excused a prisoner's failure to exhaust because staff members gave the prisoner misleading instructions.  *See* 312 F.3d at 112.  But here, unlike the inmate in *Croak*, Mr. Alonzo does not identify any threat or misleading instruction by staff that prevented him from filing grievances about the H-Code or transfer.  Rather, he knew how to use the grievance system and did so for other unrelated issues during this same period.  *See* ECF No. 72-18 at 8.  He also does not allege that he asked for information about how to grieve and was misinformed or denied an explanation.  *See Hardy v. Shaikh*, 959 F.3d 578, 587–88 (3d Cir. 2020) (misrepresentation requires a false or misleading statement on which an inmate would be entitled to rely).  The record therefore does not support that prison officials thwarted Mr. Alonzo's ability to file grievances.

Nor does Mr. Alonzo show that the grievance process operated as a "dead end" or was "so opaque that it [became], practically speaking, incapable of use."  *See Ross*, 578 U.S. at 643.  Unlike the inmates who have successfully invoked an exception to exhaustion in other cases, Mr. Alonzo does not claim in his briefing that he unsuccessfully attempted to file grievances, or that he filed

---

[6] Mr. Alonzo cites *Ross v. Blake* for the proposition that a grievance procedure is unavailable where prison officials thwart an inmate's efforts to exhaust administrative remedies.  *See* ECF No. 83 at 7.  In *Ross*, the Supreme Court concluded that a prison's routine dismissal of grievances on procedural grounds raised questions about whether the process was available, and it remanded for the district court to consider this issue.  *See* 578 U.S. at 645–48.  The plaintiff in *Ross* mistakenly believed that the prison's internal investigations were a substitute for the grievance process, and there was some evidence supporting the reasonableness of that belief.  *Id.*  Notably, the defendants could not identify a single instance in which a grievance was considered on the merits while an investigation was pending.  *Id.* at 647.  By contrast, Mr. Alonzo has not introduced any comparable evidence that Defendants have systematically rejected grievances or represented to prisoners that any internal investigations were a substitute for the grievance procedure.

grievances and received no response. *See Shifflett v. Korsniak*, 934 F.3d 356, 365–66 (3d Cir. 2019) (grievance process is a dead end where prison officials fail to respond to grievances within the timeframe mandated by their own policy); *see also Bond v. Horne*, 553 F. App'x 219, 222 (3d Cir. 2014) (process was a dead end where the plaintiff's grievances were ignored multiple times). Instead, he simply did not file them. And though he claims confusion about why he received an H-Code, *see* ECF No. 72-2 at 28–29, he does not contend that the grievance procedures themselves were too confusing to follow, especially given that he used them for other matters at around this same time. *See Moco v. Janik*, No. 22-307, 2023 WL 6632952, at *3–4 (2d Cir. Oct. 12, 2023).

In sum, Mr. Alonzo did not file grievances for his transfer or H-Code, and he has not shown that prison staff thwarted his efforts or that the grievance process was a dead end or opaque. Accordingly, Mr. Alonzo failed to exhaust his transfer and H-Code claims as required by the PLRA and does not satisfy any of the exceptions to exhaustion. Summary judgment to Defendants is therefore warranted on this ground. *See* 42 U.S.C. § 1997e(a); *Rinaldi*, 904 F.3d at 266–67.

### b. Administrative Custody

Next, Mr. Alonzo did not exhaust the prison's administrative remedies for his placement in administrative custody. The proper avenue to challenge the reasons for or duration of administrative custody is prison policy DC-ADM 802, *see* ECF No. 72-20 at 17; *see also* Pa. Dep't of Corr., DC-ADM 804 § 1(A)(7), which provides two working days to appeal the outcome of an administrative custody hearing. *See* ECF No. 72-20 at 15. Any other challenge related to administrative custody is governed by prison policy DC-ADM 804, *id.* at 17, which provides "15 working days after the event upon which the claim is based" to file a grievance. Dep't of Corr., DC-ADM 804 § 1(A)(8).

Mr. Alonzo's First Amendment claim challenges the reasons for administrative custody, since he argues that he was placed in administrative custody for a retaliatory purpose. *See, e.g.*, ECF No. 1 at 6. He was therefore required to file an appeal within two working days of his administrative custody hearing. *See* ECF No. 72-20 at 15, 17. Turning to Mr. Alonzo's Eighth and Fourteenth Amendment claims, it is unclear whether these claims challenge the reasons for or duration of Mr. Alonzo's administrative custody, or some other aspect of administrative custody.[7] However, liberally construing Mr. Alonzo's complaint, *see Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011), Mr. Alonzo was entitled to fifteen working days to file a grievance in connection with his Eighth and Fourteenth Amendment claims. *See* Pa. Dep't of Corr., DC-ADM 804 § 1(A)(8).

Mr. Alonzo did not satisfy the above requirements. He does not argue that he filed any grievances challenging his administrative custody placement—whether within two or fifteen working days of his hearing or when his administrative custody began. *See* ECF No. 83 at 3–9 (arguing that Mr. Alonzo was excused from exhausting his administrative remedies). As discussed above, he appealed the misconduct he received, but that appeals process challenged his misconduct charges, and all appeals related to the misconduct except the final level of appellate review occurred before his administrative custody hearing and placement in administrative custody. *See* ECF No. 72-6 at 2 (appeal to Program Review Committee); ECF No. 72-7 at 2 (decision); ECF

---

[7] In particular, construing Mr. Alonzo's complaint liberally, it is possible that his Eighth Amendment claim challenges the conditions of his administrative custody as cruel and unusual, rather than the reasons for or duration of his administrative custody. *See* ECF No. 1 at 6. On the other hand, Mr. Alonzo clarified at his deposition that his Eighth Amendment claim was based on it being cruel and unusual to retaliate against him for filing his PREA complaint, which is a challenge to the reasons for administrative custody. *See* ECF No. 72-2 at 32. Regardless, whether Mr. Alonzo was afforded two or fifteen working days to bring his grievances, he failed to properly exhaust his administrative remedies.

No. 72-8 at 2 (appeal to Superintendent); ECF No. 72-9 at 2 (decision).[8]  Mr. Alonzo therefore did

not exhaust his administrative remedies with respect to administrative custody.  *See Talley*, 111

F.4th at 262–63.[9]

Mr. Alonzo argues that he is excused from the exhaustion requirement because Defendants

did not inform him of his right to appeal his administrative custody placement.  *See* ECF No. 83

at 9 n.1 (Plaintiff "swears under the 'penalties of perjury' that lead defendant Joe Terra did not

inform him of his appellate rights" at his administrative custody hearing and weekly administrative

custody reviews).  As an initial matter, this statement is contradicted by the record.  Mr. Alonzo's

inmate record states that he "was explained his appeal rights" at the hearing during which he was

placed in administrative custody.  *See* ECF No. 72-10 at 3.  And it is unclear whether a single

statement in Mr. Alonzo's summary judgment opposition brief, without additional evidence, is

sufficient to create a genuine dispute of fact on this issue.  *See Vega v. Rell*, 611 F. App'x 22, 26–

27 (2d Cir. 2015) (affirming grant of summary judgment to defendants on exhaustion grounds

---

[8] The record does not indicate when the final level of appellate review for Mr. Alonzo's misconduct occurred—only that it took place sometime before September 17, 2021.  *See* ECF No. 2 at 11; *see also supra* Section I.A.

[9] Though Mr. Alonzo does not claim that he filed grievances related to his administrative custody, the Court notes that his grievance summary sheet indicates that he filed two grievances related to "Conditions" in June 2021.  *See* ECF No. 72-19 at 8.  It is unclear what these grievances pertained to, *see id.*, although it is possible that they could relate to Mr. Alonzo's Eighth Amendment claim, insofar as that claim is based on the living conditions in administrative custody.  *But see* ECF No. 72-2 at 32 (stating that Mr. Alonzo's Eighth Amendment claim is based on the retaliatory nature of his administrative custody placement).  Nonetheless, those grievances would have come after any filing deadline.  *See* Pa. Dep't of Corr., DC-ADM 804 § 1(A)(8).  And in any case, Mr. Alonzo has not provided any evidence that the conditions in his administrative custody cell were so poor as to amount to cruel and unusual punishment, indicating that his Eighth Amendment claim would fail on the merits.  *See* ECF No. 72-2 at 30–32 (stating that Mr. Alonzo was permitted to watch TV in administrative custody, leave his cell about six times per day, and purchase certain items from the commissary); *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (the mere fact of being placed in administrative custody is not cruel and unusual punishment under the Eighth Amendment).

where the plaintiff "offered no evidence beyond his conclusory allegation that grievance forms were not available to him" and the record showed that the plaintiff "was provided a form on which he could have grieved his complaint, but elected not to use it").

Nonetheless, even assuming Mr. Alonzo was not specifically told that he could appeal his administrative custody placement, that alone fails to satisfy one of the three exceptions to exhaustion. Mr. Alonzo does not satisfy the first two exceptions to exhaustion because the record does not support that the prison's grievance process was either a dead end or so opaque that an "ordinary prisoner" could not "discern or navigate it." *See Ross*, 578 U.S. at 643–44. Though Mr. Alonzo claims that he was not specifically told of his right to appeal his administrative custody placement, he was generally aware that the prison had a grievance process and, indeed, had filed a number of grievances before. *See* ECF No. 72-2 at 43–45; ECF No. 72-19 at 7–10. Moreover, he does not argue that he inquired about the process for challenging administrative custody but was given opaque instructions. *See Dollar v. Coweta Cnty. Sheriff Office*, 446 F. App'x 248, 251 (11th Cir. 2011) (looking to whether inmate "could not have discovered" grievance process through "reasonable effort"). And even if Mr. Alonzo showed some confusion about which specific grievance policy applied, *see* ECF No. 72-2 at 44–45, Mr. Alonzo does not argue in his summary judgment papers—and there is no evidence—that he filed a grievance regarding his administrative custody placement. *See Moco*, 2023 WL 6632952, at *3–4 (where plaintiff had "general understanding of the existence of a grievance procedure," he was not excused from taking steps to exhaust it); *Vontz v. Winger*, No. 24-1386, 2024 U.S. App. LEXIS 28304, at *3–4 (6th Cir. Nov. 6, 2024) (pointing to fact that plaintiff was generally aware of prison's grievance policies).

Likewise, Mr. Alonzo does not satisfy the final exception to exhaustion—thwarting—because nothing in the record reflects that prison officials thwarted his use of the grievance process "through machination, misrepresentation, or intimidation." *See Ross*, 578 U.S. at 644. To be sure, Mr. Alonzo's claim that he was never informed of the right to appeal administrative custody can be construed to be an argument about misrepresentation. *See* ECF No. 83 at 9 n.1. However, to establish misrepresentation, a plaintiff must show—among other things—that officials made a statement that a reasonable inmate would (1) "be 'entitled to rely on'" and (2) find "so misleading . . . as to interfere with his use of the grievance process." *See Hardy*, 959 F.3d at 587–89 (3d Cir. 2020) (citation omitted) (where prison official incorrectly told the plaintiff to fill out another grievance, rather than to appeal his grievance rejection, misrepresentation occurred). The mere failure to inform an individual about an aspect of the grievance process, by itself, is insufficient to establish thwarting. *See Johnson v. District of Columbia*, 869 F. Supp. 2d 34, 40–41 (D.D.C. 2012) ("Courts have distinguished 'failure to inform' cases" for exhaustion purposes "from cases in which affirmative action by prison staff prevented access to remedies"); *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 272–73 (10th Cir. 2003) (the fact that a prisoner is personally unaware of a grievance procedure, so long as that procedure is available, does not excuse the requirement to exhaust administrative remedies); *Brock v. Kenton County*, 93 F. App'x 793, 797 (6th Cir. 2004) (rejecting the plaintiff's argument that he was not informed of the grievance process).[10]

---

[10] A prison's failure to inform its inmates about aspects of the grievance process could certainly establish that the grievance process is opaque. *See Wiley v. Ky. Dep't of Corr.*, No. 19-5368, 2020 WL 12933851, at *3 (6th Cir. Aug. 25, 2020). However, for the reasons discussed above, the opacity exception to exhaustion does not apply here because Mr. Alonzo was generally familiar with the grievance process and does not appear to have inquired about the grievance process or taken steps to challenge his placement in administrative custody.

Here, Mr. Alonzo alleges only that Defendants failed to inform him that he could challenge his administrative custody placement. *See* ECF No. 83 at 9 n.1. He does not point to a misleading statement made by Defendants on which he was entitled to rely—such as that he was incorrectly instructed about how to use the grievance process, *see Hardy*, 959 F.3d at 587–88, or was affirmatively told that his administrative custody placement was unappealable, *cf. Manemann v. Garrett*, 484 F. App'x 857, 858 (5th Cir. 2012) (where "[n]othing in the record" showed that inmate "asked for information about filing a grievance and was refused such information," grievance process was not unavailable). And in fact, as discussed above, Mr. Alonzo had used the grievance process numerous times before. *See* ECF No. 72-19 at 7–10. He therefore cannot show that prison officials misrepresented, or otherwise thwarted, his use of the grievance process. Accordingly, Mr. Alonzo did not exhaust his administrative remedies with respect to being placed in administrative custody and does not qualify for an exception to exhaustion.

* * * *

Because Mr. Alonzo did not exhaust his administrative remedies with respect to his H-Code designation, transfer, and administrative custody placement, this Court will grant summary judgment to Defendants as to Mr. Alonzo's claims under federal law.

### B. Plaintiff's State Law Claim

Having granted summary judgment to Defendants on Mr. Alonzo's federal law claims, this Court will decline to exercise supplemental jurisdiction over Mr. Alonzo's state law claim. When a district court has dismissed all claims over which it had original jurisdiction before trial, it must decline to adjudicate the remaining claims unless considerations of "judicial economy, convenience, and fairness" support retaining jurisdiction. *Talley*, 111 F.4th at 266 n.6 (citation omitted); *see also* 28 U.S.C. § 1367(c)(3).

Because this Court will grant summary judgment to Defendants with respect to Mr. Alonzo's federal law claims, no claims remain over which there is original jurisdiction. Though original jurisdiction may be based on diversity of citizenship, 28 U.S.C. § 1332(a), this Court lacks diversity jurisdiction over Mr. Alonzo's sole remaining claim—a Pennsylvania state law claim for institutional sexual assault, as both Mr. Alonzo and Officer Wagner are domiciled in Pennsylvania.[11] *See* ECF No. 90 at 2. Likewise, neither the Pennsylvania criminal statute which Mr. Alonzo cites as the basis for his sexual assault claim, 42 Pa. Cons. Stat. § 5551(7), nor any potential tort would provide a basis for original jurisdiction.[12]

This Court therefore must dismiss Mr. Alonzo's state law claim, unless "judicial economy, convenience, and fairness" support retaining jurisdiction. *Talley*, 111 F.4th at 266 n.6. None of those considerations justify retaining jurisdiction here. The case is at the summary judgment stage, no significant judicial resources have been expended on the state-law claim, and there is no

---

[11] Officer Wagner is a citizen of Pennsylvania. *See* ECF No. 90 at 2; *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). Courts generally presume that a prisoner remains a citizen of the state where they were domiciled before incarceration. *See Pierro*, 386 F. App'x at 309. Defendants state that Mr. Alonzo's correctional records show that he resided in Pennsylvania immediately prior to his current incarceration. *See* ECF No. 90 at 2. Likewise, Mr. Alonzo states that he was born in Pennsylvania and "has always lived" in Pennsylvania, though he mentions that at one point in time he lived in New Jersey. *See* ECF No. 93 at 3 & n.1, 9. Based on this record, the Court concludes that Mr. Alonzo is more likely than not a Pennsylvania citizen. *See McCann v. George W. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (concluding that the standard for showing state citizenship is preponderance of the evidence). That conclusion is bolstered by the fact that Mr. Alonzo is serving a life sentence with no possibility of parole at SCI Chester in Chester, Pennsylvania. *Strausbaugh v. Greentree Servicing LLC*, 857 F. App'x 92, 96 (3d Cir. 2021) (courts may consider possibility of parole and "any other [relevant] factors" in determining a prisoner's citizenship). Mr. Alonzo's brief reference to living at one point in New Jersey is insufficient to create a genuine dispute of fact on this issue.

[12] Mr. Alonzo cites a provision of Pennsylvania criminal law as the basis for his state law claim for "the torts [of] sexual assault." ECF No. 1 ¶ 1. That provision states that certain offenses, including the crime of institutional sexual assault under Pennsylvania law, are not subject to a statute of limitations. 42 Pa. Cons. Stat. § 5551(7); 8 Pa. Cons. Stat. § 3124.2. Liberally construing the Complaint, Mr. Alonzo may be asserting a common-law tort claim for assault or battery.

indication that requiring Mr. Alonzo to proceed in state court would be so unfair or inconvenient as to justify retaining jurisdiction. *See id.* (affirming district court's decision to decline supplemental jurisdiction over pro se prisoner's state law claims after dismissing all federal claims); *Murrell v. Consiglio*, 841 F. App'x 357, 358, 360 (3d Cir. 2021) (affirming district court's decision to decline supplemental jurisdiction and clarifying that dismissal did not preclude pro se prisoner from pursuing state law claims in state court). In fact, Mr. Alonzo's state law claim presents potentially novel questions under Pennsylvania law as to whether coerced self-touching could constitute a battery or assault and whether sexual assault claims are barred by governmental immunity—questions more appropriately resolved by Pennsylvania courts.

The primary fairness concern in declining supplemental jurisdiction would be if Mr. Alonzo was time-barred from refiling his state law claim in state court. That concern is not present here. When a federal court declines to hear a state law claim under § 1367(c), the statute of limitations is tolled while the claim is pending in federal court and for 30 days after dismissal. 28 U.S.C. § 1367(d); *see also Jinks v. Richland County*, 538 U.S. 456, 459 (2003). This lawsuit therefore does not prejudice Mr. Alonzo from now bringing his state law claim in Pennsylvania court.

Accordingly, because no basis for original jurisdiction remains and none of the factors favor retaining jurisdiction, the Court will decline to exercise supplemental jurisdiction over the state law claim.

### IV.    CONCLUSION

For the reasons above, the Court will grant Defendants' Motion for Summary Judgment as to Mr. Alonzo's § 1983 claims. The Court will decline supplemental jurisdiction over Mr. Alonzo's state law claim for sexual assault and dismiss it without prejudice. **If Mr. Alonzo**

chooses to file his state claim for sexual assault in state court, he is directed to be mindful of the fact that his deadline for doing has been paused during the course of this lawsuit and for 30 days after this Court issues the present Opinion. *See* 28 U.S.C. § 1367(d). An accompanying Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

_____

CHAD F. KENNEY, JUDGE